**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| **OILFIELD DEVELOPMENT SPECIALISTS, LLC** | § § § | |
| Plaintiff**,** | § § | |
| | § | Case No. 4:12-cv-01278 |
| VS. | § § | |
| **CONDOR EXPLORATION, INC., CLIFF WEST, ROBERT BENSH, and QUETZAL ENERGY, LTD.** | § § § § | |
| Defendants. | § § | |

**DEFENDANT CONDOR EXPLORATION INC.'s
<u>MOTIONS TO DISMISS UNDER RULES 12(b)(2) AND 12(b)(6)</u>**

Pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6), Defendant Condor Exploration, Inc. ("**Condor**"), a corporation duly formed and operating under the laws of the State of Delaware, hereby moves to dismiss all claims filed by Plaintiff Oilfield Development Specialists, LLC ("**ODS**") against Condor on the grounds that (a) personal jurisdiction is lacking over Condor; and (b) the Complaint's allegations against Condor fail to state a claim upon which relief can be granted.[1]

## I. INTRODUCTION

Due process "requires that nonresident defendants have certain minimum contacts with the forum state, so that the exercise of personal jurisdiction does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158 (1945). Personal jurisdiction over each defendant must be analyzed individually. *Calder v. Jones*, 465 U.S. 783, 790, 104 S.Ct. 1482, 1487 (1984).  Here, Condor's connection to Texas is

---

[1]     Hereinafter, Plaintiff's First Amended Petition is referred to as the "**Complaint.**"

non-existent, namely two of its officers, both virtually inactive in its affairs for at least two years, reside in Texas. Condor is not incorporated in Texas; its principal place of business is not in Texas; it does not have a bank account in Texas; it does not have assets, operations or employees in Texas; and it does not systematically and continuously conduct business in Texas.  Instead, Condor is a Delaware corporation with its principal place of business in New York, New York. Its business consists of certain rights in exploration and production contracts for oil and gas fields in Colombia, including the Canaguaro Field, and interests in certain oil and gas assets in Oklahoma.  Accordingly, there is no basis to assert or contend that general jurisdiction exists over Condor in Texas.  In addition, Plaintiff does not allege any specific act related to its claims give rise to Texas jurisdiction, because it can not:  the claims asserted in the Complaint against Condor do not arise out of any acts purposefully undertaken by Condor in Texas so as to bring Condor within the specific jurisdiction of this Court. Accordingly, the relationship between Condor and Texas is insufficient to establish personal jurisdiction under settled law.

Separately but equally problematic for Plaintiff ODS, Plaintiff fails to state a claim on which relief can be granted as to Condor.  Plaintiff alleges it was granted an overriding royalty on oil and gas assets located in Columbia under an agreement (i) which does not actually grant such an interest, and (ii) to which none of Defendants were a party or assumed any obligation. First, this Development Agreement does not convey the purported interests.[2]  Rather, this agreement, at most, is a promise to convey some interest in the future.  Second, apparently assuming Colombian law is similar to the laws of certain U.S. States, Plaintiff ODS incorrectly

---

[2]        Although ODS fails to attach that certain Development Agreement dated May 19, 2007 to its Original or Amended Petition ("Complaint") that it filed in the State Court action prior to removal, it is well-settled law that for purposes of a Rule 12(b) motion to dismiss, the Court may consider explicitly referenced contracts and agreements, such as the Development Agreement in this case.  *In re Securities Litigation BMC Software, Inc.*, 183 F.Supp.2d 860, 882 (S.D. Tex. 2001).  The Development Agreement is "integral to and explicitly relied on in the complaint." *Id*.   It is repeatedly referenced in the Complaint and serves as the central document giving rise to the purported overriding royalty interest.  (*See* Compl. ¶¶ 10-11 and Compl. Section E, Breach of Contract, ¶ 2-3).

claims that successors-in-title somehow become liable for overriding royalties which are merely contractual obligations under Colombian law.   Plaintiff incorrectly states that Condor, as a successor owner of the particular field at issue, became liable for the overriding royalty to Plaintiff.   Overriding royalty interests are not property interests under Colombian Law; thus, successor owners of oil and gas producing properties are not responsible for an overriding royalty granted by any previous owner.   At most, this override is a contractual obligation.   Third, ODS does not allege, because it can not, that Condor somehow assumed or was otherwise assigned any such contractual obligation.   Because there has been no assignment of this Development Agreement to Condor (and there is no allegation that the Development Agreement was assigned to Condor), Condor is not responsible for any contractual obligation to pay ODS an overriding royalty.[3]

## II.   NATURE OF CLAIMS

### A.   Jurisdictional allegation.

Plaintiff ODS asserts that this Court has general jurisdiction over Condor based solely on a mistaken fact.   In the Complaint, ODS asserts that "[t]his Court has jurisdiction over Condor because Condor has its principal place of business in Texas." (Compl. ¶ 7.)   As explained below and supported by affidavit, not only is the principal place of business *not* in Texas, Condor has not engaged in any business in Texas nor had any operations in Texas for several years.   Plaintiff ODS has not alleged any other ground for jurisdiction, general or specific, over Condor either, quite simply because none exist.

---

[3]        Under applicable choice of law provisions, Colombian law applies to determine the nature of the purported interest in the Colombian oil and gas reserves reflected in the Canaguaro Field, Colombia.   Accordingly, a declaration of a Colombian lawyer setting forth the applicable interpretation of Colombian law is provided at Quetzal's Response to Motion to Remand [Dkt. #10], Ex. 2.

**B.      Claim allegations.**

In its pleadings, Plaintiff ODS alleges that it was conveyed a 2% net overriding royalty interest ("ORRI") in the oil and gas development of the Canaguaro Field in Colombia pursuant to a Development Agreement with an entity that is *not* a party to this lawsuit.  Specifically, ODS and an entity called Canaguaro Investors LLC allegedly executed a Development Agreement on March 19, 2007, in which ODS claims Canaguaro Investors LLC granted the ORRI to ODS. (Compl. ¶ 10).

Plaintiff further alleges that at the time of the execution of the Development Agreement on March 19, 2007, Canaguaro Investors LLC held a 100% working interest in the oil and gas development of the Canaguaro Field. (Compl. ¶ 10).  Plaintiff claims that after its execution of the Development Agreement with Canaguaro Investors LLC, Canaguaro Investors LLC subsequently conveyed its interest in the Canaguaro Field to Condor, and that as a result of such conveyance to Condor, Condor somehow became bound by the ORRI obligations of Canaguaro Investors LLC under the Development Agreement by virtue of its acquisition of the oil and gas properties.[4] (Compl. ¶ 11).

However, Plaintiff's Complaint side steps two key facts:  (i) Condor is not a party to the Development Agreement, and (ii) the Development Agreement does not actually convey any override, it is merely a covenant to convey such an interest in the future if certain events are satisfied.  ODS does not claim or allege that any contractual document, statutory requirement, or legal instrument bound Condor to the obligations of Canaguaro Investors, LLC under the Development Agreement regarding the alleged ORRI.  Rather, the Complaint simply asserts,

---

[4]      Plaintiff goes on to allege that co-defendant Quetzal subsequently obtained a 25% interest in the Canaguaro Field indirectly from Condor and that, as a result, Quetzal also somehow became bound by the ORRI obligations of Canaguaro Investors LLC under the Development Agreement, (Comp. ¶ 12-13), again presumably because of the chain in title.

*ipso facto*, that the conveyance by Canaguaro Investors LLC of its interest in the Canaguaro Field to Condor under the Development Agreement resulted in Condor becoming bound by the alleged ORRI obligations in the Development Agreement because it contained an assignment provision. (Compl. ¶ 10-11.)   In short, Plaintiff's Complaint alleges that Condor received an interest in the Canaguaro Field from Canaguaro Investors LLC (an incorrect fact), and, as a result, Condor became automatically bound by the Development Agreement to make payments to ODS for its ORRI interest.

### III.    LACK OF JURISDICTION

**A.    Plaintiff cannot establish personal jurisdiction over Condor in this Court.**

A federal district court sitting in diversity has personal jurisdiction over a nonresident defendant to the same extent as a state court in the state in which the district court is located. *See, e.g., Bullion v. Gillespie*, 895 F.2d 213, 215 (5th Cir.1990).   Accordingly, the federal court must consider the applicable Texas law on its jurisdiction.   In Texas, the Long Arm Statute (Tex. Civ. Prac. & Rem. Code Ann. § 17.042) has been determined to be co-extensive with and as far reaching as the limits of the Due Process Clause of the United States Constitution. *Moki Mac River Expeditions v. Drugg*, 221 S.W.3d 569, 575 (Tex. 2007); *Conner v. ContiCarriers and Terminals, Inc*., 944 S.W.2d 405 (Tex. Civ. App.—Houston [14th Dist.] 1997, no writ). The exercise of personal jurisdiction can be maintained if the nonresident defendant has purposefully availed itself of the benefits and protections of the forum state by establishing "minimum contacts" with the forum state, *see, e.g., International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945), and if the exercise of jurisdiction over the nonresident defendant does not offend "traditional notions of fair play and substantial justice." *Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102, 113, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987).

When a nonresident defendant moves to dismiss under Fed. R. Civ. P. 12(b)(2), the burden is on the plaintiff to establish the existence of personal jurisdiction over that defendant. *Stuart v. Spademan*, 772 F.2d 1185, 1192 (5th Cir. 1985); *Bill Rea Ins. Assocs., Inc. v. National Fin. Servs. Corp.,* 860 F. Supp. 1181, 1184 (W.D. Tex. 1994).  If the defendant timely challenges *in personam* jurisdiction, the plaintiff has the burden of proving by a preponderance of the evidence facts necessary to sustain the court's exercise of *in personam* jurisdiction over the defendant.  *Travelers Indem. Co. v. Calvert Fire Ins. Co.*, 798 F.2d 826, 831 (5th Cir. 1982).

A defendant's contacts with the forum can give rise to either general or specific jurisdiction. *Guardian Royal Exch. Assurance, Ltd. v. English China Clays, P.L.C.*, 815 S.W.2d 223, 227 (Tex. 1991).  General jurisdiction is appropriate when the foreign defendant's acts within the forum are so ***continuous and systematic*** that the forum's exercise of jurisdiction over the defendant would not offend due process.  *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414-19 (1984). When general jurisdiction is alleged, a court's minimum contacts inquiry is broader, more demanding, and requires a showing of ***substantial*** activities in the forum state.  *Conner v. ContiCarriers and Terminals, Inc*., 944 S.W.2d 405, 411 (Tex. Civ. App.— Houston [14[th] Dist.] 1997, no writ).

Specific jurisdiction is proper over a nonresident defendant when the cause of action arises out of or relates to the defendant's contacts with the forum, as long as the contact resulted from the defendant's purposeful conduct and not the unilateral activity of the plaintiff or others. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297-98 (1980); *Leonard v. USA Petroleum Corp.*, 829 F. Supp. 882, 890 (S.D. Tex. 1993).  For specific jurisdiction to exist, the plaintiff's cause of action must arise out of or relate to the defendant's activities "purposefully directed" at the forum state and must result from alleged injuries that "arise out of or relate to"

those activities.  *Helicopteros Nacionales de Columbia*, 466 U.S. at 414; *Guardian Royal*, 815 S.W.2d 223, 227-28 (Tex. 1991).

Plaintiff cannot meet its burden to show jurisdiction for multiple reasons:

1.  There is no basis for general jurisdiction over Condor in this case.

The Fifth Circuit and Texas courts have held that in order to establish general jurisdiction, a plaintiff must show "***extensive contacts*** between a defendant and a forum." *Submersible Sys., Inc. v. Perforadora Central S.A.*, 249 F.3d 413, 419 (5th Cir. 2001)(emphasis added).

In this case, Plaintiff alleges the existence of general jurisdiction by its assertion that "[t]his Court has jurisdiction over Condor because Condor has its principal place of business in Texas." (Compl. ¶ 7.)  However, Plaintiff's allegation that Condor's principal place of business is in Texas is not correct. The direction, control and coordination of Condor (its "nerve center") has not been in Texas for at least the past two years; therefore, its principal place of business is not in Texas. (*See* Quetzal's Notice of Removal [Dkt #1], Ex. 4, Sucher Decl. ¶¶ 2-7; Quetzal's Response to Motion to Remand [Dkt. 10], Ex. 1, *Second* Sucher Decl. ¶¶ 11-13, and Ex. 3, West Decl. ¶¶ 5-7;  s*ee also*, *Hertz Corp. v. Friend*, 130 S. Ct. 1181 (2010).[5]

Nor is there any basis for general jurisdiction in Texas as Condor does not engage in any extensive contacts with the State.  Condor does not have any assets or operations in Texas, does not do business or sell products in Texas, does not hire employees in Texas, does not target Texas residents, does not maintain a registered agent and does not retain any offices, bank accounts or phone listings in Texas – falling far short of the requirement that contacts be

---

[5]      As a result of its principal place of business not being in Texas, Condor is a ***non***resident of Texas because, as Plaintiff concedes, Condor is incorporated under the laws of Delaware. (Compl. ¶ 3).   A corporation is only considered a Texas resident if it is incorporated in Texas or its principal place of business is in Texas. *National Truckers Service, Inc. v. Aero Systems, Inc*., 480 S.W.2d 455 (Tex. Civ. App. Fort Worth, 1972, ref. n.r.e.)

extensive for general jurisdiction. (Quetzal's Notice of Removal [Dkt. #1], Ex. 4, Sucher Decl.

¶¶ 5-7; and Quetzal Response to Motion to Remand [Dkt. 10] Ex. 1, *Second* Sucher Decl. ¶ 11,

and Ex. 3, West Decl. ¶ 4.) While two of Condor's officers reside in Texas, they are not

presently "active" in Texas in the performance of management duties for Condor, nor have they

been for at least the last two years. (Quetzal Response to Motion to Remand [Dkt. 10], Ex. 1,

*Second* Sucher Decl. ¶  11, and Ex. 3, West Decl. ¶¶ 6-7). The residence of an officer in the

forum state who is not "active" in conducting business for the corporation in the forum state is

not sufficient to establish general jurisdiction. *See BHP De Venezuela, C.A.*, 994 S.W.2d 321,

327 (Tex. Civ. App.—Corpus Christi 1999); *Superior Energy Servs., Inc. v. Sonic Petroleum

Servs. Ltd.*, 328 S.W.3d 623, 631 (Tex. Civ. App.—Eastland 2010, no pet.)

In this case, not only has Scott Sucher, a citizen of New York, been actively involved in

essentially all of the material decisions of Condor since April of 2010, subject to approval by its

board of directors, including assisting in the direction, control and coordination of Condor's

business and affairs (Quetzal's Notice of Removal [Dkt. #1], Ex. 4, Sucher Decl. ¶¶ 2-3), a

majority of the Condor board of directors are themselves also citizens of New York. (Quetzal

Response to Motion to Remand [Dkt. #10] Ex. 1, *Second* Sucher Decl. ¶ 13.)  In addition, even

though Condor was previously registered to do business in Texas up until July 24, 2009 (Compl.

¶ 18), that fact does not result in or establish general jurisdiction.  In this regard, ***even a

corporation's current registered agent in Texas and current registration to do business in

Texas do not result in general jurisdiction***. *Conner v. ContiCarriers and Terminals, Inc*., 944

S.W.2d 405, 413 (Tex. Civ. App.—Houston [14[th] Dist.] 1997, no writ); *Leonard v. USA

Petroleum Corp*. 829 F. Supp. 882 (S.D. Tex. 1993). The courts have long held that a

corporation's consent to jurisdiction by registering and appointing an agent is no more than

"mere fiction." *Pennsylvania Fire Ins. Co. v. Gold Issue Mining and Milling Co*., 243 U.S. 93 (1917).

> 2.   Plaintiff's cause of action does not arise from any alleged specific contacts of Condor that occurred in the forum state.

Plaintiff does not allege specific jurisdiction over Condor in this case, nor can it do so.[6] A two-part test is applied in Texas to determine whether the exercise of specific jurisdiction comports with due process: first, the nonresident defendant must do some act or consummate some transaction within the forum or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; and, second, the claim must be one which arises out of or results from the defendant's specific forum-related activities. *Moki Mac River Expeditions v. Drugg*, 221 SW3d 569, 575 (Tex. 2007). Both parts of the test must be satisfied for specific jurisdiction to exist. *Id.* Here, ODS fails to meet either prong of this test.

Plaintiff cannot satisfy the purposeful-availment requirement (the first prong) in this case as Condor does not have specific contact with Texas that constitutes "purposeful availment of the privilege of doing business in the forum; by purposeful direction of activities at the forum; or by some combination thereof." *Nuovo Pignone v. STORMAN ASIA M/V*, 310 F.3d 374 (5th Cir. 2002).  Condor has made no effort to benefit from specific contact directed to or within the State of Texas, much less from any contact with Plaintiff or any contact with the people or laws of Texas. Nor should that be surprising. Condor has no assets, operations, offices, employees or bank accounts in Texas. (Quetzal's Notice of Removal [Dkt. #1], Ex. 4, Sucher Decl. ¶¶ 5-7; and Quetzal Response to Motion to Remand [Dkt. #10], Ex. 1, *Second* Sucher Decl. ¶ 11, and Ex. 3,

---

[6]       As discussed in Section A., above, the only jurisdictional allegation directed at Condor is the general jurisdiction allegation that "[t]his Court has jurisdiction over Condor because Condor has its principal place of business in Texas." (Compl. ¶ 7.)

West Decl. ¶ 4.) Its assets and operations are in Colombia and Oklahoma, not in Texas. (Quetzal's Notice of Removal [Dkt. #1], Ex. 4, Sucher Decl. ¶ 5; Quetzal Response to Motion to Remand [Dkt. #10], Ex. 1, *Second* Sucher Decl. ¶ 11, and Ex. 3, West Decl. ¶ 4.) Condor does not solicit customers from Texas; nor does it advertise specifically targeting Texas residents related to its work on the Canaguaro Field or otherwise. (Quetzal Response to Motion to Remand [Dkt. #10], Ex. 1, *Second* Sucher Decl. ¶ 11.)

Similarly, Plaintiff ODS cannot satisfy the second prong – that the claim must arise out of or result from the defendant's forum-related activities. Condor has had no Texas-related activity that has any bearing on, or that relates in any way to, ODS' claim. The only Texas-related jurisdictional activity alleged in the Complaint is in connection with the jurisdictional claim over co-defendant **Quetzal,** not Condor. Plaintiff claims that "This court has jurisdiction over Quetzal because Quetzal has contracted with Condor, by mail or otherwise, in Harris County, Texas." (Compl. ¶ 7.) Assuming that this alleged "contracting" means anything, it can only be explained by Plaintiff's subsequent allegation that "Quetzal has entered into contracts with Condor for the Authorization for Expenditures for the Canaguary #1 Well in Houston, Texas…." (Compl. ¶ 17.) Even though this jurisdictional claim is directed at co-defendant Quetzal rather than Condor regarding contracts executed years ago, it does not serve to create or establish personal jurisdiction over Defendant Condor.

As this Court is aware, the reference to Authorization for Expenditures ("AFEs") (Compl. ¶ 17) is to expenditures for the drilling of an oil and gas well, here a specific oil and gas well in the Canaguaro Field in Colombia, the Canaguary #1. The alleged forum-related activity of executing an AFE does ***not*** give rise, or relate to, Plaintiff's claim (that Condor owes it money for its alleged ORRI in a Colombian oilfield) under either the "but for" causal test of *Prejean v.*

*Sonatrach, Inc*., 652 F.2d 1260, n. 21 (5th Cir. 1981) (holding there that the contractual contact brought the parties "within striking distance of each other"), or the narrower "substantial connection" test of *Moki Mac River Expeditions v. Drugg*, 221 SW3d 569, 584-585 (Tex. 2007) (holding that for the nonresident defendant's forum contacts to support an exercise of specific jurisdiction, there must be a "substantial connection" between those contacts and the ***operative facts*** of the litigation") (emphasis added).

In the instant case, the AFEs have nothing to do with and did not give rise to ODS' alleged ORRI interest because the Complaint alleges that Condor only became obligated to ODS upon acquisition of its interest in the Canaguaro Field ***before*** Quetzal became operator and issued the AFEs. (Compl. ¶¶ 11-14, 17).  Therefore, the AFEs could not have "caused" (resulted in) the alleged ORRI obligation and the "but for" causality does not exist.

Obviously, Plaintiff cannot satisfy the narrower "substantial connection" test either.  The issuance of the AFEs are not "substantially connected" to the "operative facts" of the alleged granting of an ORRI to ODS (or Condor's alleged obligation to pay monies from production to ODS) for two reasons: first, the alleged creation of Condor's alleged ORRI obligations under the Development Agreement occurred before Quetzal received its interest as operator and issued the AFEs, (Compl. ¶ ¶  11-14, 17); and second, the AFEs for the Canaguary #1 well refer to expenditures for the drilling of the Canaguary #1 well (Compl. ¶ 17).  The expenditures for drilling a well (or payment from resulting production) are not substantially related to the operative facts as to whether ODS was assigned an ORRI under the Development Agreement that imposes obligations on Condor.  Since neither the "but for" nor the "substantially connected" tests are satisfied, specific jurisdiction cannot exist in Texas over Condor, even if Plaintiff were to have alleged such basis against Condor.  Plaintiff is similarly unable to establish

11

specific jurisdiction with respect to its "alternative" conversion and constructive trust claims. (Compl., Section E, ¶¶ 5, 7-9.)

3.  There is no basis for application of the Texas Long Arm Statute.[7]

Where the subject of the alleged jurisdiction is a contract, the Texas Long Arm Statute provides that a nonresident does business in this State and is thereby subject to this State's jurisdiction if the nonresident "***contracts by mail or otherwise with a Texas resident and either party is to perform the contract in whole or in part in this state***." Tex. Civ. Prac. & Rem. Code § 17.042(1) (emphasis added); *see also Kelly Law Firm, P.C. v. An Attorney for You,* 679 F.Supp.2d 755, 771 (S.D. Tex. 2009) (citing statute). Plaintiff does not, nor can it, allege facts that would satisfy this contractually-based provision of the Texas Long Arm Statute with respect to the nonresident, Condor.[8]

Plaintiff alleges that co-defendant Quetzal issued AFEs to Condor allegedly in Houston, Texas. (Compl. ¶ 17). Although Plaintiff only uses this allegation to claim jurisdiction over Quetzal, (Compl. ¶ 7), even if Plaintiff had attempted to use the AFEs to assert the existence of jurisdiction over Condor, such assertion would have been unfounded for two reasons: (1) Quetzal is a Canadian corporation, not a Texas resident. (Compl. ¶ 6); and (2) the AFEs are not performed in Texas as they relate to expenditures for an oil and gas well in the Canaguaro Field in Colombia, the Canaguary #1. (Compl. ¶¶ 15, 17.) None of the obligations under the AFEs are

---

[7]  Because this Court presides over this matter under diversity jurisdiction, Texas law applies to determine the extent and applicability of personal jurisdiction. *See Alert 24 Sec., LLC v. Tyco Intern., Ltd.*, 823 F. Supp. 2d 589 (S.D. Tex. 2011). Here, Plaintiff only alleges general jurisdiction over Condor because of its alleged principal place of business being in Texas (Compl. ¶ 7) which has been previously discussed in Section A.1, and the Texas Long Arm Statute is co-extensive with general and specific jurisdiction under Sections A. 1-2 above (*i.e.,* the Texas Long Arm Statute extends to the limits of the Due Process Clause of the Constitution). *Tiemann v. Spin Master Ltd.*, No. C-07-311, 2008 WL 2096958 (S.D. Tex. May 15, 2008).  This analysis is provided for it focuses on specific jurisdiction, both for contractual-based claims and for tort-based claims as alleged by Plaintiff in its "alternative" conversion and constructive trust claims.

[8]  As shown in fn. 5, above, Condor is a **non**-resident of Texas.

performed in Texas, and Plaintiff has alleged none. Further, Plaintiff is incorrect in its jurisdictional allegations against Quetzal that the AFEs are entered into between co-defendant Quetzal and Condor in Harris County, Texas. (Compl. ¶¶ 7 and 17.) Instead, the AFEs are both issued by Quetzal and approved by Condor outside of Texas. (Quetzal's Motion to Dismiss [Dkt. #6], Ex. 1, MacMicken Decl. ¶ 10; Quetzal's Response to Motion to Remand [Dkt. #10], Ex. 1, *Second* Sucher Decl. ¶ 12.) The AFEs involve the payment into Colombia for expenditures for a well drilled and located in Colombia, and no aspect of the AFEs are performable in whole or in part in Texas. (Quetzal's Motion to Dismiss [Dkt. #6], Ex. 1, MacMicken Decl. ¶¶ 10-11.) Payments by Condor to Quetzal for the AFEs are not disbursed from Texas. (Quetzal's Notice of Removal [Dkt. #1], Ex. 4, Sucher Decl. ¶ 5; and Quetzal's Response to Motion to Remand [Dkt. #10] Ex. 1, *Second* Sucher Decl. ¶ 12).

Similarly, Condor's share of the remittances from the Canaguary #1 well are paid from Colombia to a bank account in Condor's name located in New York, not in Texas.  (Quetzal's Motion to Dismiss [Dkt. #6], Ex. 1, MacMicken Decl. ¶ 12; Quetzal's Response to Motion to Remand [Dkt. #10], Ex. 1, *Second* Sucher Decl. ¶ 12) As a result, the AFEs are not executed by a Texas resident, and they are not performed by either party in whole or in part in Texas.

Plaintiff claims that Canaguaro Investors LLC conveyed its interest in the Canaguaro Field to Condor. (Compl. ¶ 7).  Plaintiff does not allege that Canaguaro Investors LLC is a Texas resident[9] or that the alleged conveyance of these Colombian properties was executed in Texas. Further, the conveyance could not be performed in Texas as it relates to the Canaguaro Field in Colombia.

---

[9]     In actuality, Condor did not receive its rights in the Canaguaro Field from Canaguaro Investors, LLC. Rather, it received such rights from five Colombian entities, none of which were Canaguaro Investors, LLC. (Second Sucher Decl. ¶¶ 4-5.)

Thus, jurisdiction in this State cannot be established on the Texas Long Arm Statute. *Kelly Law Firm, P.C.*, 679 F.Supp.2d at 771 (setting out requirements for jurisdiction based on the Texas Long Arm statute).

Condor does not have the extensive and systematic contacts with Texas required for general jurisdiction in Texas. Plaintiff may seek to argue (incorrectly) that at one time, more than 2 years ago, Condor had such contacts. Even if true, it would not be relevant to the analysis as to whether jurisdiction exists now, when this lawsuit was filed. If Plaintiff seeks to argue specific jurisdiction exists, neither of the two elements necessary exist: (1) Condor has not done some act or consummated some transaction within Texas, nor has it purposefully directed activities at Texas, by which it availed itself of the privilege of doing business in Texas, and (2) Plaintiff's claim against Condor based on Plaintiff's alleged rights under its Development Agreement with Canaguaro Investors LLC, (Compl. ¶ 10), does not arise from or relate to any specific activity of Condor within the State of Texas.

Plaintiff does not allege that the AFEs give rise to, or are substantially connected with, Condor's alleged assumption of Canaguaro Investors LLC's ORRI obligation under the Development Agreement, which is the basis of Plaintiff's claims against Condor. As a result, Condor's alleged contracts with Quetzal in Texas – the AFEs– are not only issued and approved outside of Texas, they are wholly irrelevant to the Plaintiff's claims against Condor (and, derivatively, Bensh and West). (Compl. ¶18). Therefore, the AFEs cannot give rise to specific jurisdiction in Texas. Finally, the requirements of the Texas Long Arm Statute for contractually-based claims are not satisfied. For this reason, this Court should dismiss Plaintiff's claims against Condor under FRCP 12(b)(2) for lack of personal jurisdiction.

## IV. ARGUMENT AS TO FAILURE TO STATE A CLAIM

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). "A claim for relief is plausible on its face 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 796 (5th Cir. 2011) (quoting *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal,* at 1937. Courts insist upon "'specificity in pleading' … to avoid the potentially enormous expense of discovery in cases with no 'reasonably founded hope'" of success. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558-59 (2007). Where a complaint fails to state a claim, "this basic deficiency should … be exposed at the point of minimum expenditure of time and money by the parties and the court." *Twombly*, 550 U.S. at 558.

ODS is not entitled to recover any monies related to an overriding royalty interest ("ORRI") in the Canaguaro Field in Colombia because it was not granted any such interest and otherwise fails to allege that it received any conveyance or grant of such ORRI interest. Also, Condor was not a party to the Development Agreement, and ODS does not allege that somehow Condor was assigned the obligations under the Development Agreement. Consequently, Condor has no obligation under the Development Agreement. ODS also alleges that by virtue of its ownership of the Canaguaro Field in Colombia, Condor somehow becomes obligated for an alleged ORRI but that is not supported by Colombian law. Under Colombian law, ORRI are not separate property interests, rather they are only contractual rights; therefore, there is no obligation regarding the ORRI that somehow travels with ownership of the concession for the Canaguaro Field in Colombia.

15

A.    **The Development Agreement Does Not Create or Grant ODS an Overriding Royalty Interest in the Canaguaro Field in Colombia.**

Plaintiff ODS erroneously claims to own an Net Overriding Royalty Interest ("ORRI") because it misinterprets the legal agreement between the parties; thus, it has no such claim as set forth in the Complaint.  (Compl. ¶ 10 states, "The Development Agreement granted to ODS, among other items, a 2% Net Overriding Royalty Interest (ORRI) in 100% of all of Canaguaro Investors, LLC's interests in the Canaguaro Field in Colombia, which at the time was a 100% working interest").  The parties to the Development Agreement (none of which are Defendant Condor) reached agreement regarding certain rights of an entity called Canaguaro Investors, LLC, identified as the "Company" in that document.  In that document, Canaguaro Investors LLC promised to convey an ORRI to ODS at some point in the future as compensation, but merely by executing the Development Agreement, ODS had not yet received its alleged ORRI as it claims.

The operative language in the Development Agreement states as follows:

1.    <u>Compensation</u>.   Company, at a reasonable time, ***after*** it legally owns a working interest in the Properties, ***does hereby promise to BARGAIN, GRANT, SELL, ASSIGN, TRANSFER, AND CONVEY*** unto Developer, its successors or assigns, a Net Overriding Royalty Interest ("ORRI") …..

(Plaintiff's Motion to Remand [Dkt. #7], Ex. B-1, Development Agreement ¶ 1) (emphasis added).   This language unequivocally states that ***after a specified future event*** occurs, subsequent to the date the parties' executed the Development Agreement, Canaguaro Investors, LLC merely "promises" to subsequently transfer or convey an ORRI interest to Developer (*i.e.,* ODS). At best, the Development Agreement is merely a promise by non-party Canaguaro Investors, LLC to grant ODS an ORRI in the future, but it is evident that ODS was not conveyed that interest in the Development Agreement itself.  A plain reading of that document confirms

that ODS may have a claim against Canaguaro Investors LLC for failing to convey an ORRI later, but ODS does not have a cause of action for payment from production to an alleged ORRI that does not appear to have ever been conveyed.

ODS asserts no other basis for its entitlement to any proceeds from the production of the Canaguaro Field in Colombia. ODS bases its claim for an ORRI on the Development Agreement entirely, and it makes no other allegation as to the source of that purported interest. As the Development Agreement does not grant any such interest to ODS, its claim must be dismissed.

**B.    Even Assuming Canaguaro Investors LLC had somehow conveyed an ORRI to Plaintiff, Condor is not liable for that ORRI under applicable law and the Claims should be dismissed under Rule 12(b)(6).**

Even if this Court assumes all of Plaintiff's allegations are true – as it is required to do when a defendant moves for dismissal pursuant to Fed. R. Civ. P. 12(b)(6) – it must still dismiss Plaintiff's claims against Condor as a matter of law on the grounds that Plaintiff has failed to plead enough facts to state cognizable legal claims.

1.    _An overriding royalty interest does not run with the land in Colombia_.

Plaintiff has failed to state a legal basis for Condor to owe any obligation to ODS for the alleged ORRI. Plaintiff bases its claim on its rights to the ORRI purportedly granted in the Development Agreement of March 19, 2007, but Plaintiff admits that Condor was not a party to that Development Agreement. (Compl. ¶ 10). Plaintiff simply claims that because an interest in the Canaguaro Field was later conveyed to Condor, _ipso facto_, "ODS' interests were binding" on Condor.  (Compl. ¶ 11).  The conveyance of an ORRI in the Canaguaro Field to Condor cannot create an obligation of Condor because under Colombian law an overriding royalty interest is not

a separate property interest that "runs with the land." (Quetzal's Response to Motion to Remand [Dkt. #10], Ex. 2, Montoya Decl. ¶ 6.)[10]

Unlike the law in Texas or other jurisdictions in the United States, an ORRI is not a separate property interest under Colombian law. An ORRI does not create a legal obligation that runs with the land and binds successive owners or producers on the land. (Quetzal's Response to Motion to Remand [Dkt. #10], Ex. 2, Montoya Decl. ¶ 6.) Rather, under Colombian law, an overriding royalty interest is a contractual right that can only be imposed against the counter-party to a contract. (Quetzal's Response to Motion to Remand [Dkt. #10], Ex. 2, Montoya Decl. ¶ 6.) As ODS does not possess a separate property interest or any claim that burdens subsequent concession-holders of the Canaguaro Field in Colombia, ODS has no direct claim against Condor simply because it acquired the working interests in the Canaguaro Field.

2. _ODS does not allege that Condor was ever assigned or expressly assumed any contractual obligation regarding the ORRI obligation._

ODS bases its claim entirely on the fact that Condor is a successor owner or assignee of the Canaguaro Field. Although ODS is factually incorrect that Condor received its ownership of that field from Canaguaro Investors LLC, the assumption of that fact as true for purposes of this motion does not alter the legal analysis that Condor has not responsibility for this alleged ORRI claim. Because the rights of any alleged holder of an ORRI do not run with the land and burden subsequent owners or developers of oil and gas properties in Colombia, they are nothing more than contractual rights. Here, ODS does not claim nor does it allege that Condor was assigned or expressly assumed the obligations of Canguaro Investors LLC under the Development

---

[10] For purposes of application of Colombian law, Defendant Condor attaches the declaration of María Montoya, as notice of the law of Colombia pursuant to Fed. R. Civ. P. 44.1.

Agreement. It can not.[11]  Condor has no contractual obligation to pay any revenues to ODS with respect to its purported ORRI in the Canaguaro Field.

ODS appears to also suggest that the provisions of the Development Agreement that make it binding on successors and assigns obligates Condor for payments due under the purported ORRI.  (Compl. ¶ 10.)  The provisions of the Development Agreement itself show that these allegations in the Complaint fail to allege a cause of action against Condor. The Development Agreement states that it is governed by Delaware law. (Plaintiff's Motion to Remand [Dkt. #7], Ex. B-1, Development Agreement ¶ 5.2.)  Under Delaware law, an assignee of rights is not bound to perform the assignor's duties and obligations associated with those rights *unless* the assignee expressly agrees to do so. *Munro v. Beazer Home Corp.* (not reported in A.3d) 2011 WL 2651910, at *7 (Del. Com. Pl. 2011). Therefore, even under the terms of the Development Agreement itself, Condor's receipt of an interest in the Canaguaro Field is not sufficient to allege that Condor is obligated for the ORRI absent an express assumption of the obligations under the Development Agreement.[12]

Even Texas law is clear that an assignee of an interest is not liable for obligations related to that interest under a separate contract between the assignor and a third-party *unless the assignee has expressly or impliedly assumed such identified obligation under the agreement*. *See Jones v. Cooper Indus., Inc.*, 938 S.W.2d 118, 124 (Tex. App.—Houston [14th Dist.] 1996,

---

[11]     Plaintiff even concedes that Condor did not expressly assume the ORRI obligation in the Development Agreement as shown by its reliance on the "successors and assigns" provision of the Development Agreement in an attempt to support its claim that Condor became obligated for the ORRI under the Development Agreement. (Compl. ¶11).

[12]     There is also a third reason that Condor's receipt of an interest in the Canaguaro Field did not serve to bind Condor to the ORRI obligation in the Development Agreement. As discussed in footnote 9 to the Fed. R. Civ. P. 12(b)(2) discussion above, Condor did *not* receive its interest in the Canaguaro Field from Canaguaro Investors LLC, as alleged in ¶ 11 of the Complaint. Rather, Condor received its interest from five Colombian entities, none of which were Canaguaro Investors LLC. (Quetzal's Response to Motion to Remand [Dkt. #10], Ex. 1, *Second* Sucher Decl. ¶ 5.) However, this third basis is outside of the ambit of the Court's consideration for a motion to dismiss under Fed. R. Civ. P. 12(b)(6), and this reason is not urged here.

writ denied) (emphasis added).  *Jones* holds that a subsequent assignee of a contract right, in that case a patent, is ***not*** obligated to pay royalties related to that contract right under a separate contract between the assignor and an unrelated third party absent the express or implied agreement of the assignee to undertake that contractual liability. *Id.* at 124. The rationale of *Jones* is that the royalty in that case on personal property, a patent, did not "run with the patent" as does a right in real property that "runs with the land."  *Id.* at 123-124.  Similarly in this case, the overriding royalty interest claimed by ODS in the Canaguaro Field in Colombia does not "run with the land" under Colombian law. Rather, under Colombian law, an overriding royalty interest is merely a contractual right and ***does not run with the land***. (Montoya Decl. ¶ 6.)

In order to expressly assume a contractual obligation, there must be actual promissory words, or words of assumption, on the part of the assignee and reference to the specific obligation. *Jones*, at 124.  Plaintiff alleges no such promissory words or words of assumption by Condor.  Similarly, "implied covenants are not favored, and courts will not lightly imply additional covenants enlarging the terms of a contract."  *Id*.  In the *Jones* case, the Court found Texas law did not readily read an "implied" assumption of the obligation:

> It is not enough to say that an implied covenant is necessary in order to make the contract fair, or that without such a covenant it would be improvident or unwise, or that the contract would otherwise operate unjustly. Rather, ***it must be shown that the assignment*** [of the patent in that case, of the interest in the Canaguaro Field in this case] ***served to destroy*** any right that the third-party might have against the assignor.

*Id.* at 125-126 (emphasis added).

In this case, the Plaintiff has not alleged that Plaintiff's right to proceed against Canaguaro Investors LLC under the alleged Development Agreement (Compl. ¶ 10-11) was somehow destroyed by Condor's receipt of an interest in the Canaguaro Field.  Finally, the ruling in *Jones v. Cooper Industries* also dispenses with ODS' attempt in this case to rely on the alleged

"assignment" clause in the Development Agreement (Compl. ¶ 10). Such a provision was held to be of no consequence in *Jones*, at 126.

## V.    CONCLUSION

For the foregoing reasons, Condor respectfully requests that this Court dismiss Plaintiff's Complaint against Condor in its entirety.

Dated: June 15, 2012                    Respectfully submitted,


By: */s/Charles S. Kelley*
      Charles S. Kelley
      Attorney-in-charge
      State Bar No. 11199580

Mayer Brown LLP
700 Louisiana Street, Suite 3400
Houston, Texas 77002-2730
Telephone:  (713) 238-2634
Facsimile: (713) 238-4634
Email: ckelley@mayerbrown.com

OF COUNSEL:

Frank A. Perrone
State Bar No. 15799500
Quinncy McNeal
State Bar No. 24074690
Mayer Brown LLP
700 Louisiana St., Suite 3400
Houston, Texas  77002-2730
Telephone: (713) 238-3000
Facsimile: (713) 238-4888
Email: fperrone@mayerbrown.com
      qmcneal@mayerbrown.com

**COUNSEL FOR DEFENDANTS
CONDOR EXPLORATION, INC. and
CLIFF WEST**

## <u>CERTIFICATE OF SERVICE</u>

This is to certify that a true and correct copy of the above and foregoing document is being automatically served on all known Filing Users in this matter through the Court's Notice of Electronic Filing Service, on this the 15th day of June, 2012, and all parties or counsel who is not a Filing User by United States first class mail, postage prepaid.  A copy of the foregoing is also being sent by email to the following:

Kenneth E. Sumner, Jr.
3100 Richmond, Ave, Suite 480
Houston, Texas 77098
Tel. (281) 753-2026
Fax. (281) 242-2092
ksumner@vlahadamislaw.com

*/s/Charles S. Kelley*
Charles S. Kelley