IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| OILFIELD DEVELOPMENT SPECIALISTS, LLC, | § § § § § | |
| Plaintiff, | § § | |
| against, | § § | No.   4:12-cv-01278 |
| CONDOR EXPLORATION, INC., and CARDINAL RESOURCES, PLC, a/k/a TAUREX RESOURCES, PLC | § § § § § § § | |
| Defendants. | § | |

## FIRST AMENDED COMPLAINT

Plaintiff makes the allegations in this complaint based on personal knowledge and upon an investigation of counsel which included, among other things, interviews with witnesses and review of documents.

## NATURE OF ACTION

1. Defendants and Plaintiff Oilfield Specialists, LLC, ("ODS") entered into a joint venture relationship in which ODS was to identify and analyze an oil and gas prospect in South America and secure the rights to develop the prospect. Defendants were then supposed to develop the prospect and the parties were to share the profits. The parties memorialized their agreement in a Confidentiality Agreement and a Development Agreement. ODS upheld its end of the bargain by identifying, analyzing, and securing the rights to an attractive prospect and turning over the location, analysis, and rights to the prospect to Defendants. Defendants then refused to grant ODS its contracted-for share of the profits and are attempting to completely cut

ODS out of the deal. In doing so, Defendants breached their contractual duties.

## JURISDICTION AND VENUE

2. Defendants dispute that there is subject matter jurisdiction in this federal court. The Court has previously ruled that diversity jurisdiction exists under 28 U.S.C. §1332.

3. All Defendants have sufficient contacts with this district generally and with the events underlying this claim, so that they are subject to the exercise of both specific and general personal jurisdiction of this Court. The facts supporting jurisdiction are detailed in the facts section of this complaint.

4. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391. All Defendants are Texas residents, and a substantial part of the events giving rise to Plaintiff's claims occurred in this district, as described in the facts section of this complaint.

## THE PARTIES

5. Plaintiff ODS is a Louisiana limited liability company with its principal place of business at 12211 Katy Freeway, Ste. 608, Houston, Texas, 77079.

6. Defendant Condor Exploration, Inc. ("Condor") is a corporation chartered under the laws of Delaware with its principal place of business in Texas.

7. Defendant Cardinal Resources, PLC, a/k/a Taurex Resources, PLC ("Cardinal"), is a company organized under the laws of Great Britain with its principal place of business in Texas.

## CONDITIONS PRECEDENT

8. All conditions precedent to the Plaintiff bringing this suit are satisfied or have occurred.

## FACTS

9. The factual allegations contained herein are supported by the affidavit of Dr. Louis Quintero, attached hereto as Exhibit A. The facts recited in that affidavit, and the exhibits attached thereto, are incorporated herein by reference.

10. Dr. Luis Quintero is a Ph.D. petroleum engineer with extensive experience and contacts regarding South American oil and gas fields and prospects. Dr. Quintero was the founder and manager of ODS, which was in the business of identifying and developing oil and gas prospects in North and South America.

11. On August 1, 2006, ODS entered into a private agreement with an entity known as the Canaguaro Consortium, led by William Blackburn. The Canaguaro Consortium held the exclusive rights to develop three fields in Colombia—the Quebrada Roja Field, the Toca Field, and the Canaguaro Contract Field (the "Colombian Prospect"). ODS was to acquire a working interest in the Colombian Prospect if it could find suitable investors.

12. Dr. Quintero had a business relationship with Cliff West and Robert Bensh. Bensh and West are residents of Houston, Texas and took all actions described herein in Houston, Texas.

13. In 2006, ODS approached West and Bensh to inquire if they would be interested in a joint venture in the Colombian Prospect. West and Bensh showed interest and wanted to know more.

14. ODS, working out of its office in Houston, Texas, performed extensive analysis on information provided by the Canaguaro Consortium and confirmed that the Colombian Prospect was an attractive prospect for West and Bensh.

15. ODS then decided to bring West and Bensh's company, Cardinal, into the deal as a joint venture partner. From the outset, ODS was concerned that if it disclosed to Cardinal, West, and Bensch that it had located an attractive prospect, Cardinal, West, and Bensh would try to go directly to the owner of the fields and attempt to cut ODS out of the deal.

16. To assuage these concerns, ODS and Cardinal entered into the "Confidentiality Agreement" on August 1, 2006. *See* Exhibits A-1, A-2, A-3. The purpose of this agreement was to establish that Cardinal and ODS would develop the Colombian Prospect together and that Cardinal would not seek to cut ODS out of the deal once Cardinal was introduced to the Canaguaro Consortium and William Blackburn.

17. Cardinal agreed in the Confidentiality Agreement that neither it nor any of its affiliates would use any of the information or analysis that ODS disclosed, which included the very existence and location of the Colombian Prospect, for any purpose other than to enter into negotiations with ODS and the Canaguaro Consortium to participate in the Colombian Prospect. ODS and Cardinal negotiated and signed the Confidentiality Agreement in Houston, Texas. ODS performed its obligations under the Confidentiality Agreement in Houston, Texas. Cardinal was aware that ODS had its primary offices in Houston, Texas and would be performing all the obligations under the Confidentiality Agreement in Houston. The Confidentiality Agreement contains a choice of law provision in favor of Texas law.

18. Once Cardinal and ODS entered into the Confidentiality Agreement, ODS introduced Cardinal to the Canaguaro Consortium and William Blackburn and ODS, Cardinal, and the Canaguaro Consortium began negotiations to develop the Colombian Prospect. All of these negotiations took place in Houston, Texas.

19. Initially, Cardinal took the lead in the negotiations and sent a proposal letter to the Canaguaro Consortium on October 6, 2006, and a letter of intent on November 1, 2006. *See* Exhibit A-4. The letter originated from Cardinal's office in Houston, Texas.

20. At some point, West, Bensh, and the other principles of Cardinal decided to form a new entity to develop the Canaguaro Block called Canaguaro Investors, LLC. Canaguaro Investors, LLC was formed and controlled by Bensh and West.

21. Canaguaro Investors, LLC sent a new letter of intent to the Canaguaro Consortium on January 4, 2007. *See* Exhibit A-5. This letter also originated from Cardinal and Canaguaro Investors, LLC's offices in Houston, Texas.

22. On March 6, 2007, Cardinal, West, and Bensh formed Condor. Condor was majority owned by Cardinal and directed by West and Bensh.

23. On March 19, 2007, ODS and Canaguaro Investors, LLC formalized their agreement regarding the Canaguaro Block and signed the "Development Agreement." *See* Exhibit A-6. The Development Agreement acknowledged the past work ODS had performed in locating and analyzing the Canaguaro Block. It also stated that ODS will continue to assist Canaguaro Investors, LLC with the development of the block in the future. The Development Agreement stated its purpose was to "compensate ODS for its time and efforts" in locating, analyzing, and developing the Canaguaro Block opportunity. The parties negotiated and signed the Development Agreement in Houston, Texas. ODS performed all of its obligations under the Development Agreement in Houston, Texas. Defendants performed all of the obligations that they did not fail to perform under the Development Agreement in Houston, Texas.

24. As compensation for ODS's past and future contributions to the joint venture, the Development Agreement obligated Canaguaro Investors, LLC to transfer ODS a 2% net overriding royalty interest ("ORRI") in three fields located in the Colombian Prospect—the Quebrada Roja Field, the Toca Field, and the Canaguaro Contract Field.

25. As further compensation, Canaguaro Investors, LLC agreed to pay ODS $75,000 in cash "within 30 days of [Canaguaro Investors, LLC] signing the Assignment Agreements acquiring a 100% working interest in the Canaguaro Contract and a 51% working interest each in the Toca Field and the Quebrada Roja Field."

26. At the time the parties signed the Development Agreement, ODS still held its private agreement with the Canaguaro Consortium, who controlled the Quebrada Roja Field, the Toca Field, and the Canaguaro Contract Field. William Blackburn of the Canaguaro Consortium informed ODS that it needed to make sure it had a valid agreement with Canaguaro Investors, LLC in place, as the Canaguaro Consortium needed to be released from the private agreement. The Development Agreement thus envisioned that ODS would release the Canaguaro Consortium from its contractual obligation to ODS so that the Canaguaro Consortium could transfer the rights to the fields to Canaguaro Investors, LLC, which could then transfer ODS its 2% ORRI and $75,000 cash payment and then develop the fields.

27. ODS initially understood that Canaguaro Investors, LLC received the assignment from the Canaguaro Consortium, and then in turn, further assigned the Colombian Prospect to Condor. It was not until August 20, 2012 when Condor, pursuant to the Court's order, revealed the actual assignment document from Canaguaro Consortium that ODS discovered that the

assignment was never made to Canaguaro Investors, LLC but instead was assigned directly to Condor.

28.     The fact that Defendants decided to use Condor, a different corporate entity that was still owned and controlled by West and Bensh and their affiliates, to receive the assignments from the Canaguaro Consortium was not particularly troubling to ODS so long as Condor, which was benefitting from ODS's work and the Development Agreement agreed to be bound by the terms of the Development Agreement. West, acting as a director of Condor, repeatedly assured ODS that such was the case, both in written correspondence and a formal forbearance agreement, as described below. As such, it is clear that Canaguaro Investors, LLC assigned the Development Agreement to Condor, and Condor agreed to be bound by its provisions.

29.     The first representation that Canaguaro Investors, LLC assigned the Development Agreement to Condor came with respect to the $75,000 cash payment that the Development Agreement required Canaguaro Investors, LLC to make to ODS. When ODS sought this payment, Condor represented to ODS that it had assumed all of Canaguaro Investors, LLC's obligations under the Development Agreement and asked ODS to invoice it for the $75,000. ODS invoiced Condor, and Condor eventually paid the invoice. ODS relied on Condor and Canaguaro Investors, LLC's representation that Condor had assumed the obligations under the Development Agreement by not taking immediate legal action against Defendants.

30.     In fact, when Condor was late making the above-described payment, Condor signed a forbearance agreement on November 26, 2007. *See* Exhibit A-7. The forbearance agreement specifically acknowledged that Canaguaro Investors, LLC had assigned the Development Agreement and all its obligations to Condor. The forbearance agreement stated

that Condor acknowledged it had breached the Development Agreement by not paying the $75,000 when due, and in exchange for ODS not taking immediate legal action, paid ODS $10,000.

31. When ODS inquired about payment of its 2% ORRI through legal counsel, Condor responded with another series of representations. On February 2, 2011, Condor, speaking through Cliff West, wrote in response to an inquiry about the overriding interest:

> Kenny,
>
> I wish you had contacted me first because our partners have no knowledge of the ORRI agreement between Condor and ODS. As I mentioned in our phone call Condor is aware of its obligations under the terms of the agreement and intends to honor them.

See Exhibit A-10. ODS relied on Condor and Canaguaro Investors, LLC's representation that Condor had assumed the obligations under the Development Agreement by not taking immediate legal action against Defendants. The above representation was generated and received in Houston, Texas.

32. Upon further inquiry through counsel, West repeated this representation in even stronger terms in writing on February 10, 2011:

> Kenny,
>
> I received your voice mail yesterday regarding the ORRI. I do not see what the trouble is—I have acknowledged that Condor is aware of the agreement and will abide by it at the appropriate time.

See Exhibit A-11. ODS relied on Condor and Canaguaro Investors, LLC's representation that Condor had assumed the obligations under the Development Agreement by not taking immediate

legal action against Defendants. The above representation was generated and received in Houston, Texas.

33. Around this time period Cardinal stated on its website that ODS was the owner of the 2% ORRI in the Columbian Prospect fields. *See* Exhibit A-9. Cardinal's 2007 annual statement also states that ODS owns the 2% ORRI. *See* Exhibit A-8.

34. Despite these clear representations, Condor ultimately refused to pay ODS its ORRI. When ODS brought this legal action against Condor, Condor reversed its position by 180 degrees and claimed that it had not assumed any responsibilities under the Development Agreement, had instead obtained the interests in the Canaguaro Block fields directly from the Canaguaro Consortium, owed ODS nothing, and had thus completely cut ODS out of the deal.

35. If this is truly Defendants' new position then they have admitted to acting in concert with each other in breaching the Confidentiality Agreement. That agreement prohibited Cardinal and its affiliates, as defined to include all the Defendants, from using the information ODS divulged about the Canaguaro Block fields for any purpose other than to acquire those interests from ODS. Defendants are apparently attempting to use the information they obtained from ODS to cut ODS out of the deal completely.

## FIRST CLAIM FOR RELIEF
**Breach of the Development Agreement Against Condor Exploration, Inc.**

36. Plaintiff incorporates the allegations contained in the preceding paragraphs here.

37. ODS and Canaguaro Investors, LLC entered into the Development Agreement whereby Canaguaro Investors, LLC agreed to pay ODS the above described 2% ORRI.

38. The Development Agreement permits Canaguaro Investors, LLC to assign its rights and obligations under the Development Agreement to affiliates so long as the affiliates are

bound by the Development Agreement.

39. Canaguaro Investors, LLC assigned the Development Agreement to Condor and Condor became bound by its provisions.

40. Oil has been discovered in the Canaguaro Block, and payments on ODS's ORRI have become due, but Condor has failed to pay ODS its ORRI.

41. Plaintiff seeks its actual damages and reasonable attorneys' fees as compensation for Defendants' breaches of contract. All conditions precedent necessary to bring this action have been fulfilled or have occurred.

## SECOND CLAIM FOR RELIEF
### Breach of the Confidentiality Agreement Against Cardinal Resources, PLC and Condor Exploration, Inc.

42. Plaintiff incorporates the allegations contained in the preceding paragraphs here.

43. Cardinal and ODS entered into the Confidentiality Agreement.

44. The Confidentiality Agreement states that ODS was going to give Cardinal confidential information which included the existence and location of the Canaguaro Block. Cardinal agreed to keep that information confidential and to only use that information to evaluate the prospect in order to decide whether to enter into negotiations with ODS to acquire ODS's rights to the prospect.

45. ODS gave Cardinal the above-described confidential information.

46. The Confidentiality Agreement stated that it was binding on any of Cardinal's affiliates that received the confidential information ODS supplied. The agreement defined affiliates as "any company or legal entity which controls, or is controlled by, or which is controlled by an entity which controls, a Party." Cardinal was the majority owner of Condor and

shared common ownership with the other owners of Condor. Condor was thus Cardinal's affiliate.

47. Cardinal gave the above-described confidential information to its affiliate Condor and thus bound Condor to the Confidentiality Agreement.

48. Condor, acting in concert with Canaguaro Investors, LLC (both companies were directed by the same two people, West and Bensh), then apparently used the confidential information regarding the existence and analysis of the Canaguaro Block to circumvent and cut ODS out of the deal by inducing ODS to release the Canaguaro Consortium from its private agreement with ODS based on a promise to grant ODS the ORRI, obtaining ODS's interest in the Canaguaro Block directly from the Canaguaro Consortium, and refusing to pay ODS its ORRI. As such, Condor breached the Confidentiality Agreement.

49. Cardinal breached the Confidentiality Agreement by allowing its subsidiary Condor to use the confidential information to circumvent ODS, as described above, by directing Condor to do so and by participating in the circumvention.

50. Plaintiff seeks its actual damages and reasonable attorneys' fees as compensation for Defendants' breaches of contract. All conditions precedent necessary to bring this action have been fulfilled or have occurred.

### THIRD CLAIM FOR RELIEF
### Attorneys' Fees Pursuant to
### TEXAS CIVIL PRACTICE & REMEDIES CODE § 38.001

51. Plaintiff incorporates herein the allegations contained in the preceding paragraphs.

52. As described above, Defendants breached the Development and Confidentiality Agreements and Plaintiff is entitled to its reasonable attorneys' fees pursuant to § 38.001 of the

Texas Civil Practice & Remedies Code.

### FOURTH CLAIM FOR RELIEF
### Accounting

53.     Plaintiff incorporates herein the allegations contained in the preceding paragraphs.

54.     Because a fiduciary relationship exists between ODS and Defendants, Defendants have a duty to fully disclose any information regarding the joint venture.

55.     Plaintiff demands an accounting for joint venture to discover the financial details regarding the profits and royalties generated by the Canaguaro Block fields.

### DISCOVERY RULE AND FRAUDULENT CONCEALMENT

56.     Plaintiff pleads the discovery rule and fraudulent concealment to toll all applicable statutes of limitations. As described above, Defendants actively concealed their breaches of contract until after this lawsuit was filed.

WHEREFORE, Plaintiff demands judgment against Defendants as follows:

A.   Awarding Plaintiff its damages plus interest for Defendants' wrongful acts complained of;

B.   Granting Plaintiff reasonable attorneys' fees under § 38.001 of the Texas Civil Practice & Remedies Code;

C.   Ordering an accounting; and

D.   Granting such other and further relief, including pre-judgment and post-judgment interest, as this Court deems just and proper.

### JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury for its claims.

Dated: October 24, 2012.

        Respectfully submitted,

        WARE, JACKSON, LEE & CHAMBERS, LLP

        By: /s/ Timothy Lankau
            Paul Smith
            Attorney-in-Charge
            Texas Bar No. 18662700
            S.D. Bar No. 12587
            paulsmith@warejackson.com
            Timothy Lankau
            State Bar No. 24046267
            S.D. Bar No. 660008
            timlankau@warejackson.com
            America Tower, 42nd Floor
            2929 Allen Parkway
            Houston, Texas 77019
            Telephone: (713) 659-6400
            Facsimile: (713) 659-6262

        **ATTORNEYS FOR PLAINTIFF**

## CERTIFICATE OF SERVICE

I hereby certify that on October 24, 2012 a true and correct copy of the foregoing document was filed with the Clerk of the Court by CM/ECF and sent by regular, first-class mail to the following counsel of record:

    Charles S. Kelly
    ckelley@mayerbrown.com
    Mayer Brown LLP
    700 Louisiana Street
    Suite 3400
    Houston, Texas 77002-2730
    Telephone: (713) 238-2634
    Facsimile: (713) 238-4634

        /s/ Timothy Lankau
        Timothy Lankau